UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBERT LYND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BRISTOL KENDALL FIRE | ) | Judge Joan B. Gottschall |
| PROTECTION DISTRICT, MICHAEL | ) | |
| HITZEMANN, individually and in his | ) | Case No. 11 C 7014 |
| official capacity as Fire Chief of Bristol | ) | |
| Kendall Fire Protection District, and | ) | |
| PUBLIC SAFETY SERVIES, INC., | ) | |
| an Illinois corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Robert Lynd filed a four-count complaint, alleging that the Bristol Kendall Fire Protection District ("the District"), its Fire Chief Michael Hitzemann, and Public Safety Services, Inc. ("Public Safety") conspired to and did violate his right to due process under the Fourteenth Amendment by forcing him to resign from his job as a firefighter in violation of 42 U.S.C. § 1983. He also alleges that the defendants violated Illinois' Firemen's Disciplinary Act, 50 Ill. Comp. Stat. 745, by questioning Lynd without informing him of his right to counsel or a union representative. Lynd seeks compensatory and punitive damages, and he has also requested declaratory relief. The District and Hitzemann have now jointly filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6); they further argue that this court should strike the request for punitive damages under Rule 12(f). Public Safety has also filed a motion

to dismiss under Rule 12(b)(6). For the reasons stated below, the court grants the motions.

## I. BACKGROUND

The court takes all well-pleaded facts as true for purposes of resolving these motions. Lynd began working with the Bristol Kendall Fire Department ("the BK Fire Department") on April 4, 1991, as a volunteer firefighter. In October 2003, he was hired as a full-time paramedic,[1] and he was ultimately promoted to a full-time lieutenant position in June 2007. Public Safety contracted with the District to employ Lynd as a full-time firefighter, so when he was promoted on June 18, 2007, he was considered a full-time employee of Public Safety.

On about October 3, 2010, Lynd was "involved in" an incident while he was off-duty; the police were called to investigate a disturbance at a local restaurant bar. No charges were filed against anybody as a result of the incident. On October 7, Public Safety, Public Safety's president, Gary Frederick, and members of the BK Fire Department (including Chief Hitzemann) held a disciplinary investigation meeting with Lynd. Frederick and various members of the BK Fire Department had already been in contact with each other in an attempt to reach agreement as to how to discipline Lynd. Lynd, however, had not been informed of the nature of the disciplinary allegations prior to the meeting, nor was he informed that he had a right to have a union representative or legal counsel present. After the meeting, Lynd was suspended from duty with pay.

---

[1] Although this may be a typographical error, the complaint indicates that Lynd went from being a full-time paramedic to a full-time firefighter in 2007.

The next day, October 8, Lynd was informed that he had been suspended *without* pay. He had received no new hearing, nor was he given any reason for the change in the decision. He had no opportunity to contest the suspension without pay.

On October 13, 2010, the BK Fire Department began to investigate a second incident involving Lynd—this time involving comments Lynd allegedly made to a co-worker. The next day, Hitzemann and Frederick ordered Lynd to report for a disciplinary investigation at 4:00 p.m. Again, Lynd was given no notice of the allegations against him prior to the meeting, he was not told that he could have a union representative or attorney present, and he was not given the chance to present any evidence. Police officers were present at the meeting, and Lynd was subjected to intimidation and threats while he was interrogated. Specifically, the defendants told Lynd that things would "get ugly" for him and his family, and "if he knew what was good for him" he would cooperate in signing a resignation letter. The defendants then confronted Lynd with letters of resignation that had been prepared for his signature. After he was told that he had been removed from the payrolls of the BK Fire Department and Public Safety, he signed the prepared letters.

Lynd alleges that he had a property right in his public employment as a firefighter, and that the defendants deprived him of that right by coercing him to resign from his job without the due process of law guaranteed by the Fourteenth Amendment.[2] He claims that Hitzemann and Frederick formed an agreement to violate his due process rights, and that they performed acts in furtherance of the conspiracy by making threats and attempting to intimidate Lynd. Finally, Lynd claims that the questioning to which he was subjected violated Illinois' Firemen's Disciplinary Act.

---

[2] He also mentions the First Amendment and the Equal Protection Clause in passing, but none of the facts or counts pleaded indicate that he is actually attempting to bring such claims.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), the defendant may seek to dismiss the case if the plaintiff "fail[s] to state a claim upon which relief can be granted." The court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. *Stayart v. Yahoo! Inc.*, 623 F.3d 436, 438 (7th Cir. 2010). But although Federal Rule of Civil Procedure 8(a) only requires the complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," the complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that while Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). The relevant question is whether the complaint includes enough factual allegations to "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. In other words, to survive a motion to dismiss post-*Twombly*, "'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is '*could* these things have happened, not *did* they happen.'" *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404-05 (7th Cir. 2010)).

## III. ANALYSIS

The defendants' motions raise largely the same issues, and will be addressed together. The court first turns to the federal claims, for if the federal claims cannot

survive a motion to dismiss, the court will not retain supplemental jurisdiction over the Firemen's Disciplinary Act state-law claim.

**A. Procedural Due Process and Conspiracy**

Lynd's complaint hinges in large part upon his allegation that the defendants violated his right to due process in forcing his resignation. For Lynd to establish such a claim, he will have to show that "(1) he had a constitutionally protected property interest, (2) he suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law." *LaBella Winnetka, Inc. v. Vill. of Winnetka*, 628 F.3d 937, 943-44 (7th Cir. 2010).

    1. Protected Property Interest

"[T]he threshold question is whether a protected property interest actually exists." *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 904 (7th Cir. 2011). Lynd only has a protected property interest if he has "a legitimate claim of entitlement, which means an entitlement established by rule; hope for a favorable exercise of administrative discretion does not qualify." *Portillo-Rendon v. Holder*, 662 F.3d 815, 817 (7th Cir. 2011). The defendants' primary argument is that Lynd had no property interest in his continued employment, as he was employed full-time by Public Safety—a private employer. To the extent that he is claiming he was also employed by the District, the District argues that only full-time publicly employed firefighters have a property interest in their continued employment under Illinois law, and Lynd has alleged that he is a part-time employee. Lynd responds that his complaint clearly alleges that he was a full-time employee with BK Fire Department as well as Public Safety, and that since he pleaded that he had a property right in his public employment, the court must accept that as true.

Moreover, Lynd argues that the nature of the agreement between the District and Public Safety means that Public Safety should be treated as a state actor.

Lynd has adequately alleged the existence of a protectable property interest. The Illinois Fire Protection District Act, 70 Ill. Comp. Stat. 705/0.01 *et seq.*, creates a property interest in continued employment for certain municipal firefighters. *See Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 494-95 (7th Cir. 2010). Even assuming *arguendo* that part-time municipal firefighters do not have a protectable property interest, Lynd's complaint alleges that he is employed full-time by both the District and Public Safety. Although the District argues that Lynd claimed only part-time employment, the court finds no support for this point in the complaint—in fact, the term "part-time" does not even appear. Instead, Lynd expressly states that he was a "full time firefighter with the Bristol Kendall Fire Protection District." (*See* Compl. ¶¶ 5, 9.) He also alleges that he had to sign multiple resignation letters and was removed from separate payrolls. (Compl. ¶¶ 20-21.) At least against the District, then, Lynd has alleged facts that plausibly suggest a protectable property interest.[3]

The same is true for Lynd's allegations against Public Safety. While a plaintiff "can plead himself out of court by alleging facts that show there is no viable claim," *see Pugh v. Tribune Co.*, 521 F.3d 686, 699 (7th Cir. 2008), Lynd has not done so here. Instead, Lynd's complaint indicates that Public Safety had a contract with the District that allowed Lynd to be treated as a full-time employee of the District itself. While the court expresses no opinion on the ultimate question of whether Public Safety can be treated as

---

[3] While the court must accept well-pleaded facts as true, the court is not required to "accept as true a legal conclusion couched as a factual allegation." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 465 (7th Cir. 2010) (internal quotation marks and citation omitted). The court therefore disregards Lynd's allegation that he "had a property right in his public employment as a firefighter." (*See* Compl. ¶ 33.)

a state actor under these circumstances, the facts in Lynd's complaint are not inconsistent with his theory. Lynd has alleged enough facts to push the claim into "plausible" territory.

2. Coerced Resignation

Next, the defendants argue that Lynd resigned his employment, and since he has not rebutted the presumption that the resignation was voluntary, he waived his right to any due process. While a voluntary resignation will preclude a due process claim, in certain circumstances an "involuntary resignation"—that is, a constructive discharge or a coerced resignation—can form the basis of a due process claim. *See Palka v. Shelton*, 623 F.3d 447, 453 (7th Cir. 2010). Lynd is alleging that he was coerced into resigning by the defendants' use of intimidation and threats. Coerced resignation claims are characterized by a so-called "Hobson's choice," where the employee must resign or face severe consequences, such as physical violence or criminal charges. *See Graehling v. Vill. of Lombard, Ill.*, 58 F.3d 295, 297-98 (7th Cir. 1995) (describing a hypothetical "gun to [the plaintiff's] temple"); *Patterson v. Portch*, 853 F.2d 1399, 1406 (7th Cir. 1988). By contrast, forcing an employee to choose between resigning or facing administrative board review does not qualify as a coerced resignation. *Palka*, 623 F.3d at 453. Although Lynd has not provided great detail about the alleged intimidation, he did say that the defendants threatened him and his family if he did not sign the resignation letters. (*See* Compl. ¶ 29.) Drawing reasonable inferences in Lynd's favor, these threats against his family suffice to state a coerced resignation claim at this stage in the proceeding.

3. <u>Sufficiency of State-Law Remedies</u>

The defendants next argue that even if Lynd had a protectable property interest, Lynd either had to avail himself of the procedures set out in Illinois' Administrative Review Act, 735 Ill. Comp. Stat. 5/3-101, or to allege that the Administrative Review Act's procedures are constitutionally insufficient, which Lynd failed to do. The court agrees. Lynd's due process and conspiracy claims fail for this reason.

Lynd is not alleging that the state procedures themselves are inadequate; instead, he is alleging that he was deprived of the pre-termination process he was owed under the Firemen's Disciplinary Act. That is, he is claiming that the "random, unauthorized acts" of the defendants deprived him of due process. *See Leavell v. Ill. Dep't of Natural Resources*, 600 F.3d 798, 804 (7th Cir. 2010) (distinguishing between claims that established state procedures do not comport with due process and claims of "random, unauthorized acts by state employees") (internal quotation marks and citation omitted). When a plaintiff seeks to bring such a claim, he must either "avail [him]self of state post-deprivation remedies 'or demonstrate that the available remedies are inadequate.'" *Leavell*, 600 F.3d at 804-05 (quoting *Doherty v. City of Chi.*, 75 F.3d 318, 323 (7th Cir. 1996)). In his complaint, Lynd did not allege that he availed himself of any state post-deprivation remedies, nor did he allege that such remedies are inadequate. In his response, however, he states that there was no remedy available to him under the Administrative Review Act, because he did not have an administrative hearing pre- or post-termination—instead, he was forced to resign.

In *Michaelowicz*, the Seventh Circuit determined that the available remedy under Illinois state law—the Administrative Review Act—was adequate to address violations of

the Firemen's Disciplinary Act. 528 F.3d at 537-38. The Administrative Review Act establishes a procedure for seeking state-court review of certain administrative decisions, and "permits either remand for rehearing or outright reversal of administrative decisions that are unsupported by the evidence or legally defective." *See Michalowicz*, 528 F.3d at 532, 535. There were facts present in *Michaelowicz*, however, that may not be present here: namely, the plaintiff in *Michaelowicz* had a pre-deprivation hearing before a Board of Trustees, whereas Lynd's complaint states only that he was required to participate in various pre-deprivation "disciplinary investigation meetings" in which Battalion Chief Kalina, Frederick, Hitzemann, "members of the Bristol Kendall Fire Department," and various police officers may or may not have participated. (*Compare* Compl. ¶ 13 *with* ¶¶ 20-24.)

These distinctions may be important. The Administrative Review Act is not infinite in scope; instead, it only governs actions "to review judicially a final decision of any administrative agency where the Act creating or conferring power on such agency, by express reference, adopts the provisions of [the Administrative Review Act]." 735 Ill. Comp. Stat. 5/3-102. A plaintiff does not have to have had a hearing in order to obtain review under the Administrative Review Act; he only needs some type of final decision. The court concludes that a coerced resignation is the type of "final decision" that is presentable under the Administrative Review Act, despite the fact that it is technically a resignation instead of a termination. *See Ross v. City of Freeport*, 746 N.E.2d 1220, 1221-22 (Ill. App. Ct. 2001) (noting that the state trial court had reviewed a plaintiff's claim of coerced resignation under the Administrative Review Act after the relevant administrative agency refused to provide a hearing); *Graehling v. Vill. of Lombard*, No.

9

94 C 4084, 1994 WL 698525, at *10 n.4 (N.D. Ill. Dec. 12, 1994) (noting that if the plaintiff police officer wished to challenge the finding that he had resigned, he could have appealed under the Review Act); *Fernandez v. Vill. of Bloomingdale*, No. 93 C 4502, 1993 WL 460840, at *2 (N.D. Ill. Nov. 5, 1993) ("If the plaintiffs wished to challenge the denial of their appeals or the finding that they had resigned, they could have appealed under the Administrative Review Law."); *Stover v. City of Northlake*, No. 90 C 4829, 1991 WL 86105, at *9 (N.D. Ill. May 15, 1991).

But when it comes to whether the resignation was done at the behest of an "administrative agency," the lack of detail in Lynd's complaint becomes apparent. An "administrative agency" is broadly defined as "a person, body of persons, group, officer, board, bureau, commission or department (other than a court or judge) of the State, or of any political subdivision of the State or municipal corporation in the State, having power under law to make administrative decisions." *Id.* 5/3-101. Armed only with the facts in the complaint, the court is not equipped to determine whether the Administrative Review Act applies, because Lynd has not provided adequate detail surrounding his pre-deprivation investigatory meetings. Lynd's complaint provides little detail about who was present at each meeting and whether these individuals were people who "ha[d] power under law to make administrative decisions." If the individuals present had such authority, the coerced resignation was a "final decision" for which review was available; if not, than Lynd could plausibly allege that no post-deprivation remedy was available.

Under *Twombly* and *Iqbal*, Lynd has to plead facts that plausibly establish his right to relief. In the due process context, that means pleading facts that plausibly suggest the inadequacy of the relevant state-law remedies. Lynd's complaint is silent on this

10

point, and the court has not been given adequate information to reach any conclusion on its own. Therefore, Lynd has failed to state a due process claim and Counts I-III must be dismissed.[4]

Finally, the defendants argue that there can be no punitive damages against the District or Hitzemann in his official capacity, and they ask that this request for relief be stricken. Lynd concedes the point, arguing only that punitive damages can be awarded against Hitzemann in his individual capacity. The court therefore strikes the punitive damages claims against the District and Hitzemann in his official capacity only. *See also Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) ("This official-capacity claim against the Sheriff is considered one against a municipality, and municipalities are immune from punitive damages in § 1983 suits.").

**B. Firemen's Disciplinary Act**

The District and Hitzemann argue that Lynd's state-law claim based on the Firemen's Disciplinary Act must fail because the Disciplinary Act does not expressly create a separate cause of action. Lynd's only response to that argument is to cite a Supreme Court case that says nothing about when a state statute creates a private cause of action. *See Gilbert v. Homar*, 520 U.S. 924, 926 (1997) (addressing whether a state violates the Due Process Clause by failing to provide notice and a hearing before suspending a tenured public employee without pay). This court agrees with the defendants. There is no reason to believe that the Firemen's Disciplinary Act created a private cause of action, and Lynd has provided no authority for that proposition. As the Seventh Circuit recognized in *Michaelowicz*, violations of the Firemen's Disciplinary Act

---

[4] Because Lynd's complaint fails to state a due process claim, his complaint also fails to state a conspiracy claim. *See Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 423 (7th Cir. 2000).

are adequately addressed by bringing an action under the Administrative Review Act. *See Michaelowicz,* 528 F.3d at 537-38; *see also Markos v. Chi. Park Dist.*, No. 01 C 5544, 2002 WL 1008459, at *7 (N.D. Ill. May 13, 2002) ("[I]mplying a private right of action is unnecessary because the personnel code provides an adequate remedy for code violations. *See* [*McNeil v. Carter*, 742 N.E.2d 1277, 1280 (Ill. App. Ct. 2001)] (where a statute allowed for administrative review, an implied private right of action is not necessary)."). As the court sees no basis for implying a cause of action under the Firemen's Disciplinary Act, the court dismisses Count IV with prejudice.

### IV. CONCLUSION

For the reasons stated above, Lynd's complaint is dismissed. Claims I-III are dismissed without prejudice, Claim IV is dismissed with prejudice, and the request for punitive damages against the District and Hitzemann in his official capacity are stricken. If Lynd intends to proceed in this court, he must file an amended complaint respecting Counts I-III by August 31, 2012.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: July 26, 2012