**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ROBERT LYND,** | ) | |
| **Plaintiff,** | ) | **No. 11 C 7014** |
| | ) | |
| **v.** | ) | **Judge Joan B. Gottschall** |
| | ) | |
| **BRISTOL KENDALL FIRE** | ) | |
| **PROTECTION DISTRICT, MICHAEL** | ) | |
| **HITZEMANN, and GARY FREDERICK,** | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff Robert Lynd previously worked for the Bristol Kendall Fire Protection District (the "District") as a part-time firefighter/paramedic hired directly by the District and a full-time firefighter placed at the District by Public Safety Services, Inc. ("PSSI"), which has a longstanding staffing contract with the District. Lynd alleges that in 2010, he was forced out of both positions following an incident at the now-shuttered Kendall Pub in Yorkville, Illinois. In this § 1983 action against the District, Michael Hitzemann (the District's Chief), and Gary Frederick (PSSI's President), he contends that the due process clause entitled him to notice and a hearing in connection with the loss of his employment.[1] Cross-motions for summary judgment and Lynd's motion to strike portions of the defendants' statements of fact are before the court. For the following reasons, the two motions for summary judgment filed by the defendants (the District/Hitzemann and Frederick) are granted and Lynd's motions for summary judgment and to strike are denied.

---

[1] The court previously granted judgment on the pleadings in favor of the fourth defendant in this case, PSSI. (Dkt. 57.)

# I. Background

## A.    Lynd's Motion to Strike

Lynd filed a motion to strike large portions of the defendants' statements of facts in support of the two defense motions for summary judgment. "Objections to statements of fact based on relevance are inappropriate" so Lynd's objections based on relevance are overruled. *See*, *e.g.*, *Antech Diagnostics, Inc. v. Downers Grove Animal Hosp. & Bird Clinic, P.C.*, No. 12 C 2736, 2013 WL 773034, at *1 (N.D. Ill. Feb. 28, 2013). "The court will consider facts it deems relevant provided they are supported by the record." *Id.*

Lynd also moves to strike facts that he contends are actually legal conclusions. For example, he takes issue with ¶ 22 of Frederick's facts, which states that Lynd was considered and considered himself to be a full-time PSSI employee. According to Lynd, his employment status is a legal issue. The court will determine whether Lynd's belief about his status is relevant. But in his amended complaint, Lynd alleged that he "was considered a full time employee of Public Safety Services, Inc. with a hire date of June 18, 2007." (Am. Compl., Dkt. 28, at ¶ 11.) And at his deposition, Lynd testified that he believed that he was a contract employee:

> Q:    When you were suspended with pay, did anyone tell you that it was from your position with PSSI or with the Bristol Kendall Fire Protection District?
>
> A:    No, I just assumed it was with PSSI.
>
> Q:    Did you hold any position with PSSI?
>
> A:    I don't believe so.

| Q: | You were asked when your pay was – When your pay was suspended, it was from your position with PSSI.  So that's what I'm trying to clarify.  Was there some title or job that you had with PSSI? |
| --- | --- |
| A: | As a contract employee.  I don't know what the title is . . . . |
| Q: | You were just assigned by PSSI to work at the Bristol Kendall Fire Protection District. |
| A: | Correct. |

(Lynd Dep. at 207:8-208:8.)

Frederick's ¶ 22 thus fairly summarizes the record.  Lynd cannot erase the allegations in his amended complaint and his own deposition testimony by claiming that they are legal conclusions that the court may not consider at the summary judgment stage.  The record speaks for itself.  Its legal import is an issue for the court that Lynd cannot avoid via a motion to strike.

The remainder of the motion is denied as the court has not considered any other portions of the record that are the subject of the motion to strike.

**B.      Local Rule 56.1**

There are an unusual number of Rule 56.1 submissions in this case because there are three motions for summary judgment (Lynd, the District/Hitzemann, and Frederick), all of which were separately briefed.  In addition, Lynd's motion for summary judgment is directed at all three defendants, who filed two responses (the District/Hitzemann and Frederick) to Lynd's statement of facts.

The assertions that Lynd makes in his statement of facts supporting his motion for summary judgment, his responses to the defendants' separate statements of fact, and his statement of additional facts in opposition to the defendants' two motions for summary judgment are frequently inconsistent.  For example, Lynd both disputes (with a citation to non-responsive

evidence) and agrees that the District and PSSI each issued W-2 forms to him. (Lynd's Resp. to ¶ 29 of Frederick's Facts, Lynd's Resp. to ¶ 29 of the District's Facts.)[2]

In addition, Lynd says that certain facts are disputed without a colorable basis and, frequently, without citing to the record. For example, ¶ 27 of the District's statement of facts asserts that, "Plaintiff was paid separately by each entity for working at PSSI and assigned to the District and working part-time shifts directly for the District. Plaintiff's Dep., p. 77." The cited deposition testimony provides that:

> Q:    From 2007 to 201 when you were working full time at PSSI and part time with the Bristol Kendall Fire Protection District, you were paid separately by these entities, correct?
>
> A:    Correct.
>
> Q:    PSSI would give you a paycheck and Bristol Kendall would give you a separate paycheck, correct?
>
> A:    Correct.

Lynd's response, in full, is "Disputed. Plaintiff did not perform any work at PSSI. All Plaintiff's work was performed at the District." Presumably, Lynd offers this unresponsive statement in support of his position that he was an employee of the District because he performed full-time work for the District.

It is improper to characterize undisputed facts as disputed to provide an opportunity to present legal arguments. *Cardoso v. Cellco P'ship*, No. 13 C 2696, 2014 WL 6705282, at *2 (N.D. Ill. Nov. 26, 2014). Moreover, bald denials with no citations to the record in support are

---

[2] The latter version of the facts is supported by the record as at his deposition, Lynd agreed that he "received separate W-2s for [his] employment with PSSI and the Bristol Kendall Fire Protection District." (Lynd Dep. at 78:4-7.)

ineffective. Loc. R. 56.1(b) (the party opposing summary judgment must provide, "in the case of any disagreement [with the movant's facts], specific references to the affidavits, parts of the record, and other supporting materials relied upon . . . . All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party.").

Lynd also denies facts that are supported by the record based on his contention that the facts are improperly directed at PSSI and the District, not the individuals who acted on behalf of those entities. *See, e.g.*, Lynd's Response to ¶ 41 of the District's Facts (in response to evidence about the opinions of PSSI and the District about the pub incident, Lynd states that "PSSI and the District are legal entities that don't have opinions"); ¶ 45 (disputing evidence about why PSSI terminated Lynd's employment by asserting that Frederick, not PSSI, terminated Lynd's employment). It is hornbook law that "a corporation acts through its agents." *TABFG, LLC v. Pfeil*, 746 F.3d 820, 825 (7th Cir. 2014). This type of denial is evasive.

These issues have turned the Rule 56.1 submissions into a morass.[3] The court has drawn the undisputed material facts from the record, aided (to the extent possible) by the Rule 56.1 submissions. It will not consider Lynd's descriptions of the evidence to the extent that he failed to provide supporting citations or his descriptions of cited evidence are inconsistent with the underlying evidence. To the extent that his denials of the defendants' facts are unresponsive, evasive, or argumentative, the defendants' facts are deemed admitted. *Cardoso*, 2014 WL 6705282, at *2. With these caveats in mind, the court turns to the facts.

---

[3] Further contributing to the confusion, the District's response to Lynd's facts missed a paragraph early on. Thus, most of its paragraph numbering does not correspond to the numbering in Lynd's statement of facts or Frederick's response to that statement.

**C.      Facts**

Although the record in this case is voluminous and the parties' views of certain events diverge, the relevant facts are straightforward and undisputed.  The court will provide a brief summary and then discuss specific facts necessary to resolve the summary judgment motions below.

**1.      The Parties**

The District is located in central Kendall County.  It is a public entity organized pursuant to the Illinois Fire Protection District Act, 70 Ill. Comp. Stat. § 705/1, *et seq*.  Michael Hitzemann has served as the District's Chief since 1987.  The District's non-contract employees are Chief Hitzemann, an Assistant Chief, and a full-time mechanic.

PSSI is a private company that contracts with municipalities and fire protection districts throughout Illinois to provide personnel to perform paramedic, firefighting, and related services. Gary Frederick is PSSI's owner and president.  For decades, the District has contracted with PSSI to met its staffing needs.  The District, which is a taxing body, pays PSSI for staffing as specified in the contract between the District and PSSI.  Every full-time firefighter and paramedic who works at the District is a contract employee.

Lynd has approximately twelve family members who have been firefighters and paramedics at the District, including his grandfather.  Lynd began working for the District as a volunteer in 1991.  At his deposition, Lynd agreed that once he received the necessary certifications, he applied to PSSI "with the intent of becoming a PSSI employee that would be assigned to the Bristol Kendall Fire Protection District."  (Lynd Dep. at 40:3-7.)

## 2.    Lynd's Positions

The contract between PSSI and the District requires PSSI to pay contract firefighters like Lynd "salaries, benefits, taxes, and other employment obligations."[4]  (Frederick Ex. 6, Dkt. 94-6, at ¶ 8.)  In 2007, PSSI placed Lynd in a full-time contract firefighter/paramedic position with the District and paid him a salary and provided other benefits for that work.[5]  PSSI gave Lynd an employee handbook that stated that individuals like Lynd were "at-will employee[s] who could be terminated at any time for any reason, with or without cause or notice."  (District Fact ¶ 20.)  Lynd does not dispute that he received the District's policy manual.  Like PSSI's handbook, the District's policy manual stated that individuals like Lynd were at-will employees.

Some of the contract firefighters, including Lynd, also had part-time paid-on-call jobs directly with the District.[6]  Holding multiple positions was feasible for Lynd because he was assigned to a shift working 24 hours on, 48 hours off.  The District paid Lynd for his part-time work.  Lynd received separate W-2s from PSSI and the District.

---

[4]  As a further example of the issues that plague Lynd's Rule 56.1 submissions, Lynd's denial of this fact (Frederick ¶ 9, which tracks the PSSI-District contract) is unresponsive.  Lynd appears to be using his response to take issue with Frederick's contention that PSSI employed Lynd.  However, regardless of the parties' positions about who employed Lynd, the record shows that PSSI paid Lynd a salary and provided other benefits for work that Lynd performed as a full-time contract firefighter with the District.  Indeed, even though Lynd disputes here that the PSSI-District contract required PSSI to pay Lynd's salary for his full-time contract work, elsewhere he does not deny another statement of fact (Frederick ¶ 24) indicating that PSSI paid his full-time wages.

[5]  For convenience, the court will refer to Lynd as a firefighter, although he worked as a firefighter/paramedic.

[6]  At the relevant time, Lynd also appears to have had a part-time job working as a bouncer at a bar.

Lynd did not take an examination prior to being hired for the full-time contract position through PSSI or the part-time position directly with the District. The Board of Trustees for the District did not issue a certificate of appointment memorializing a formal appointment for Lynd to serve as a firefighter. Lynd contends that he was appointed because he was approved by a vote of the District's Board of Trustees. In response, the defendants note that the record shows that this approval was in connection with Lynd's 1991 application for employment, that Lynd had a break in service with PSSI and the District starting in 2003, and that no vote was taken when Lynd returned to PSSI in 2007 and was placed full-time at the District.[7] During Lynd's break in service with PSSI, he continued to work as a part-time paid-on-call firefighter with the District.

Hitzemann testified that as a favor to Lynd's grandfather, he recommended Lynd's re-hire with PSSI, to be placed full-time at the District. Lynd testified at his deposition that when he returned to PSSI, he did not know what his title was, but knew that he had been brought back to work as a "contract employee." (Lynd Dep. at 207:8-14.)

Michael Kalina, the PSSI-District liaison, was responsible for Lynd's performance reviews. Lynd does not recall being placed on a performance improvement plan ("PIP") in 2010 (per his unresponsive response to ¶ 43 of Frederick's Facts, which is supported by citations to the record listing a litany of purported performance problems that led to the PIP). However, elsewhere in the record (his response to ¶ 30 of the District's Facts), Lynd does not dispute that

_____

[7] The parties dispute the circumstances leading up to Lynd's departure in 2003. Lynd contends he was terminated due to tardiness while the defendants point to tardiness and multiple other reasons. The cause of Lynd's 2003 termination is irrelevant for present purposes so the court will not address this issue further.

he was placed on a PIP and was counseled regarding work organization, communication with subordinates, and the importance of completing daily training. This is consistent with Lynd's deposition, as Lynd testified that he signed the PIP on April 13, 2010, and agreed that he was "aware of it," "had read it," and "[was] going to abide by it." (Lynd Dep. at 84:12-24.) He then answered a series of questions about the alleged issues raised in the PIP, including a warning that there would be "zero tolerance for any officer violating the Bristol Kendall Fire Protection District harassment policy." (*Id*. at 85:10-20.)

### 3. The Kendall Pub Incident and Its Aftermath

In the early morning hours of October 3, 2010, Lynd was involved in an incident at the Kendall Pub that resulted in the Yorkville police being called to the scene. The parties dispute at length what transpired, including whether Lynd was intoxicated or was the aggressor in a physical altercation.

The next day, the Yorkville police reached out to Hitzemann as a courtesy, given Lynd's employment, by calling Hitzemann and visiting in person. Hitzemann immediately told Kalina about the incident and asked him to investigate. Kalina then told Frederick that Lynd had been involved in an incident at the Kendall Pub that was being investigated by the Yorkville police.

On October 7, 2010, Lynd was called into a meeting with Frederick, Kalina, and Hitzemann so Lynd could present his side of the story. Lynd did not receive advance notice of the allegations of misconduct and was not informed that he could bring an attorney. Lynd stated that on the night in question, he had been to two other bars before visiting the Kendall Pub. He also stated that when he was at the Kendall Pub, he gave an individual a hug that could have been misinterpreted as a headlock and that he did not know why the Yorkville police handcuffed

him and put him in the back of a police car after they arrived at the pub. Lynd denied telling anyone at the pub that he was a fireman or threatening that he would have the pub shut down.

Following this meeting, Kalina investigated further by reading witness statements regarding the events at the pub that were taken by the police.[8] Kalina told Frederick about the fruits of his investigation. The District and PSSI both decided to suspend Lynd. Ultimately, Frederick decided to terminate Lynd's relationship with PSSI and Hitzemann decided to terminate Lynd as a part-time firefighter.

Kalina set up a meeting with himself, Frederick, Hitzemann, and Lynd for October 14, 2010, so Frederick and Hitzemann (who were armed with resignation letters for Lynd to sign) could communicate their decisions to Lynd. Lynd did not receive advance notice of the nature of the meeting. At the meeting, Hitzemann offered Lynd a choice between resigning or being the subject of proceedings that would culminate in the loss of Lynd's part-time firefighter position. Lynd chose to resign. Frederick offered Lynd a choice of resigning or being terminated from the PSSI position and advised Lynd that he might not be eligible for unemployment benefits if he resigned. Lynd elected to be terminated.

### 4. Lynd's Federal Lawsuit

Counts I and III survived multiple motions to dismiss. Count I is a § 1983 claim based on the defendants' alleged violation of Lynd's due process rights based on the failure to provide Lynd with pre- and post-deprivation hearings after forcing him to resign.[9] In Count II, which

---

[8] Lynd contends that these statements are inadmissible hearsay. The court need not reach this argument as the contents of the statements are irrelevant for present purposes.

[9] Although Count I repeatedly refers to Lynd's forced resignation, he resigned from the District part-time position and was terminated from the PSSI full-time position. The scope of

was previously dismissed (Dkt. 57), Lynd asserted that the defendants engaged in a conspiracy to deny due process by forcing him to resign. Inexplicably, Lynd has nevertheless moved for summary judgment on Count II. (Pl.'s Memo., Dkt. 98, at 14-15.) The portion of his motion directed at defunct Count II is denied as procedurally improper. Count III also arises under § 1983 and the due process clause and is based on a theory of "coerced resignation."

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In resolving summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 255 (quotation omitted). Summary judgment is warranted when the nonmoving party cannot establish an essential element of its case on which it will bear the burden of proof at trial. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012).

---

Count I is addressed below.

### III. Analysis

The Fourteenth Amendment provides that no state shall deprive a person of property without due process of law. U.S. Const. Amend XIV. To survive summary judgment on a procedural due process claim, Lynd must point to evidence showing that he has "a cognizable property interest, a deprivation of that interest, and a denial of due process." *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). "The threshold question in any due process challenge is whether a protected property . . . interest actually exists." *Citizens Health Corp. v. Sebelius*, 725 F.3d 687, 694 (7th Cir. 2013) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999); *see also Chamberlain v. Civil Serv. Comm'n of Vill. of Gurnee*, 18 N.E.3d 50, 63 (Ill. App. Ct. 2014) ("Whether a property interest is protectable under the fourteenth amendment to the United States Constitution is ultimately a question of federal constitutional law, but the resolution of federal law begins with what protectable interest, if any, state law provides.").

Lynd asserts two due process claims against the District, Hitzemann, and Frederick.[10] First, he challenges the lack of notice and a hearing before the meeting where Frederick terminated Lynd from his full-time employment with PSSI and Hitzemann purportedly forced Lynd to resign from his part-time employment with the District.[11] Second, he alleges a due

---

[10] The only claim remaining against Hitzemann is directed at Hitzemann in his official capacity. Generally, "[a]ctions against individual defendants in their official capacities are treated as suits brought against the government entity itself." *Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)). The parties do not address whether the official capacity claims against Hitzemann duplicate the claims against the District. *See Wurm v. Valders Area Sch. Dist.*, No. 14-CV-1119, 2015 WL 2351487, at *8 (E.D. Wis. May 15, 2015). The court will not address this issue further given its ruling on the motions for summary judgment.

[11] The defendants correctly note that prior to the filing of the motions for summary judgment, it was unclear whether Lynd was claiming a property interest in both his full-time job

process claim based on a theory of coerced resignation. Both of these claims are premised on Lynd's belief that he had a protected property interest in his full-time employment with PSSI that resulted in his placement with the District.

Lynd, Frederick, and Hitzemann all filed motions for summary judgment and supporting Rule 56.1 statements, leading to an extensive amount of briefing and Rule 56.1 submissions. Large portions of these submissions are duplicative and thus provided fertile ground for inconsistent (to varying degrees) characterizations of the same evidence.[12] When viewed as a whole, the parties' tripartite presentation contains the following interrelated arguments in support of Lynd's claim that he had a protected property interest in his positions as a firefighter:

1. The Illinois Fire Protection District Act, 70 Ill. Comp. Stat. § 705/16.01, *et seq*. (the "Act"), created a protected property interest:

   a. due to Lynd's full-time "direct employment" with the District (via PSSI) as a firefighter (Pl.'s Consolidated Resp., Dkt. 104, at 6);

---

with PSSI (from which he was terminated) and his part-time job with the District (from which he resigned). In his summary judgment filings, Lynd clarifies that his due process claims are based on his termination from his full-time job with PSSI. *See* Pl's Memo., Dkt. 98, at 5-6 ("Lt. Robert Lynd was denied due process when he was summarily terminated from his full-time employment without being provided any notice of allegations, or being provided with any ability to defend any allegations for which he was ultimately fired."); Pl.'s Consolidated Resp., Dkt. 104, at 12 ("the resignation only involved his part-time employment, for which Plaintiff is not claiming a due process violation."). Despite this clarification, Lynd also contends that he is entitled to summary judgment as to Count III, which is a due process claim against the District based on his purportedly coerced resignation from his part-time position directly with the District (Count III cannot be directed at PSSI because PSSI fired him; Lynd did not resign). To reconcile these conflicting positions, the court will construe Count I as a due process claim based on Lynd's full-time position at the District through PSSI and will construe Count II as a due process claim based on Lynd's part-time position directly with the District.

[12] The court appreciates that Lynd filed a consolidated response to the defendants' two summary judgment motions, thus slightly cutting down the duplicative filings.

        b.      because when Lynd was hired for the full-time PSSI position, he was "approved by vote of the Board of Trustees" (*Id*. at 6); and

        c.      because the District and PSSI are joint employers, thus transforming his employment by PSSI into employment by the District.

    2.      Pursuant to the District's policy manual, he was an employee of the District and thus was entitled to notice and a hearing prior to his termination by PSSI.

    3.      Pursuant to the contract between PSSI and the District, he was entitled to notice and a hearing prior to his termination by PSSI.

As explained below, these arguments fail to establish that Lynd had a protected property interest in his full-time position with PSSI that led to his performance of full-time firefighting work for the District or that disputed questions of material fact necessitate a trial to resolve this issue. This means that both of Lynd's due process claims fail as a matter of law.

**A.**      **Procedural Due Process (Count I)**

Constitutionally protected property interests do not derive from the Constitution itself. *DeGroot v. Vill. of Matteson*, No. 13-CV-08530, 2014 WL 3360562, at *2 (N.D. Ill. July 9, 2014). Instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id*. (quoting *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)). A claim of a protected property interest in continued employment can be based on "an independent source such as state law securing certain benefits" or "a clearly implied promise." *Roth*, 408 U.S. at 577.

As noted above, Lynd argues that a protected property interest exists based on both a state statute (the Act) and promises of continued employment made in the District's policy manual and the contract between PSSI and the District.

-14-

1. **The Illinois Fire Protection District Act**

The Act provides that:

> Unless the employer and a labor organization have agreed to a contract provision providing for final and binding arbitration of disputes concerning the existence of just cause for disciplinary action, *no officer or member of the fire department of any protection district* who has held that position for one year shall be removed or discharged except for just cause, upon written charges specifying the complainant and the basis for the charges, and after a hearing on those charges before the board of fire commissioners, *affording the officer or member an opportunity to be heard in his own defense*.

70 Ill. Comp. Stat. § 705/16.13b (emphasis added).

a. **Lynd's Claim That He Was Covered by the Act Because He Was a Full-Time Firefighter for the District**

Lynd contends that he is an "officer or member" of the District who is entitled to the due process protections in § 705/16.13b of the Act because he "worked full-time firefighter duties for the Fire Protection District for approximately 3 years before he was terminated." (Pl.'s Consolidated Resp., Dkt. 104, at 6). He vigorously argues that his placement at the District by PSSI as a contract firefighter is irrelevant because what matters is the fact that he worked full-time as a firefighter for the District.

The problem with this argument is that merely saying that Lynd was directly employed full-time by the District (as opposed to PSSI) does not make it so. *See GE Betz, Inc. v. Zee Co.*, 718 F.3d 615, 630 (7th Cir. 2013) (quoting the "famous duck test" – "if it walks like a duck, swims like a duck, and quacks like a duck, it's a duck" – in *Lake v. Neal*, 585 F.3d 1059, 1059 (7th Cir. 2009), and holding that "[i]f something has all of the qualities of a duck, then inductive reasoning tells us that it must, in fact, be a duck."). There are three interrelated reasons why Lynd's work as a full-time firefighter with the District via PSSI does not entitle him to due

process protections under the Act: (1) PSSI paid him for his full-time contract firefighting work with the District, (2) no evidence suggests that he is an "officer or member" of the District as those terms are used in the Act, and (3) he was not appointed as specified by the Act.

The Act provides that, "Every fire protection district having a fire department of which any officers or members are full time, paid members shall be subject to Sections 16.01 to 16.18, inclusive." 70 Ill. Comp. Stat. § 705/16.01. Thus, "Sections 16.01 through 16.18 [of the Act] only apply to full-time paid firemen in fire protection districts that employ full-time paid firemen." *Doering v. Bd. of Trustees of Dunlap Cmty. Fire Prot. Dist.*, No. 12-CV-1018, 2012 WL 1533349, at *3 (C.D. Ill. Apr. 11, 2012), report and recommendation adopted by 2012 WL 1533512 (C.D. Ill. Apr. 30, 2012). The District chose to use contract firefighters to meet all of its firefighting needs. The District contracted with PSSI to obtain Lynd's services as a full-time firefighter and also directly employed him as a part-time firefighter. PSSI paid Lynd for his full-time firework at the District. Thus, Lynd was not a full-time firefighter for a "fire protection district having a fire department of which any officers or members are full time, paid members." 70 Ill. Comp. Stat. § 705/16.01.

Lynd appears to be contending that this does not matter because he was a paid full-time firefighter who was assigned to the District. His argument is evocative of a corporate veil-piercing theory because he stresses that the District paid PSSI, which paid him, so he was actually paid by the District. However, he does not cite to authority supporting the novel proposition that he is an "officer or member" covered by the Act because the word "paid" in § 705/16.01 encompasses being paid by an entity other than the District and thus somehow transforms him into an "officer or member" who is entitled to due process protections. He raises

other arguments, discussed below, about the Act's applicability but his emphasis on the fact that PSSI got the funds to pay him from the District does not engage with the "officer or member" language in § 705/16.01.

Moreover, Lynd's reading of the Act is at odds with the Act's clear mandate that covered firefighters must be appointed following a detailed protocol.  At best, Lynd claims that he was an "employee" of the District.  He then argues that the Board may not "categorize employees as due-process-exempt when in fact the employees really are 'officers or members' protected by the Act's terms." *Basek v. Tri-State Fire Prot. Dist.*, 69 F. Supp. 3d 845, 851 (N.D. Ill. 2014).  This is a correct proposition:  "officers or members" who meet the Act's requirements for coverage are entitled to due process protections.

"The starting point for determining who qualifies as an 'officer' or 'member' is the Act itself.  The Act does not explicitly define either term."  *Basek*, 69 F. Supp. 3d at 850 (considering whether a Division Chief who did not fight fires was an "officer or member" under the Act).  Nevertheless, the Act's provisions regarding "officers or members" contain detailed information about "personnel appointments."  *Id.*   Specifically, the Act provides that:

> For the purposes of this Section, "firefighter" means any person who has been . . . appointed to a fire department or fire protection district or employed by a State university and sworn or commissioned to perform firefighter duties or paramedic duties, or both, except that the following persons are not included:  part-time firefighters; auxiliary, reserve, or voluntary firefighters, including paid-on-call firefighters; clerks and dispatchers or other civilian employees of a fire department or fire protection district who are not routinely expected to perform firefighter duties; and elected officials.

70 Ill. Comp. Stat. § 705/16.06c.

The Act contains numerous other references to the link between appointments and status as "officers or members" who fall within the Act's ambit:

-17-

- The appointment process requires a signed certificate of appointment following a vote by the board. *See* 70 Ill. Comp. Stat. § 705/16.04a. "The board of fire commissioners shall appoint all officers and members of the fire departments of the district, except the Chief of the fire department . . . . All appointments to each department other than that of the lowest rank, however, shall be from the rank next below that to which the appointment is made . . . . The sole authority to issue certificates of appointment shall be vested in the board of fire commissioners and all certificates of appointments issued to any officer or member of the fire department shall be signed by the chairman and secretary respectively of the board of fire commissioners upon appointment of such officer or member of the fire department by action of the board of fire commissioners."

- "The board shall make rules (1) to carry out the purpose of Sections 16.01 to 16.18 inclusive, and (2) for appointments and removals in accordance with the provisions of such sections. The board, from time to time, may make changes in these rules." 70 Ill. Comp. Stat. § 705/16.05.

- The Act contains detailed provisions regarding the appointment process. 70 Ill. Comp. Stat. § 705/16.06b(b). Appointments "shall be made from a register of eligibles established in accordance with the processes required by this Section" following competitive testing. *Id*. § 705/16.06b(b) & (c).

- "The sole authority to issue certificates of appointment shall be vested in the board of fire commissioners, or board of trustees serving in the capacity of a board of fire commissioners. All certificates of appointment issued to any officer or member of an affected department shall be signed by the chairperson and secretary, respectively, of the commission upon appointment of such officer or member to the affected department by action of the commission. Each person who accepts a certificate of appointment and successfully completes his or her probationary period shall be enrolled as a firefighter and as a regular member of the fire department." 70 Ill. Comp. Stat. § 705/16.06b(b).

A colorable appointment pursuant to the Act is a necessary prerequisite to obtaining due process protection under the Act. *See Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 496-97 (7th Cir. 2010) (internal quotations omitted) (holding that "a person holds the position of a municipal officer by virtue of a colorable appointment coupled with performance of the duties of the position and remuneration therefor."). Thus, the Seventh Circuit has rejected a claim that a would-be firefighter he had a property interest in prospective employment based on

his application for employment. *Moore v. Muncie Police & Fire Merit Comm'n*, 312 F.3d 322, 326-27 (7th Cir. 2002) (quoting *Petru v. City of Berwyn*, 872 F.2d 1359, 1363 (7th Cir. 1989) (refusing to "recognize a 'property' interest for an appointment to a classified position in the realm of public employment" because it "would drastically extend the scope of the due process clause"). Similarly, the Seventh Circuit has held that "a position on an eligibility list does not provide a necessary right to appointment." *Petru*, 872 F.2d at 1364.

If an application for direct employment and a position on the register of eligibles are not enough to create a right to due process under the Act, then Lynd – whose employment as a contract firefighter makes him even further removed from a direct appointment by the District – also lacks a due process right. In sum, the Act's due process protections apply to full-time firefighters paid directly by the District who are appointed "officers or members." These protections do not reach individuals who provide full-time contract firefighting services but are neither paid directly by the Village nor appointed "officers or members."

### b. Alleged Approval By The Board of Trustees

Alternatively, Lynd argues that when he was hired for the full-time PSSI position, he "submitted an application, had an interview and was approved by vote of the Board of Trustees." (Pl.'s Consolidated Resp., Dkt. 104, at 6.) He appears to be contending that this purported approval (which the defendants assert happened in 1991 in connection with a different position) means that he is covered by the Act because he was appointed. Even assuming that Lynd was approved in 2007 when he returned to PSSI and was placed full-time with the District, approval to serve as a contract full-time firefighter is not the same as being appointed as a full-time District firefighter as detailed in the Act. *See Rinchich v. Vill. of Bridgeview*, 235 Ill. App. 3d

614, 629-30 (1992) (plaintiff was not entitled to the position of Lieutenant with the fire department because his appointment as a Training and Education Officer by the Board of Fire and Police Commissioners did not establish that he was an appointed "municipal officer" under state law).

Moreover, the Act, as detailed above, lists events that must occur before a firefighter becomes an "officer or member" who receives due process protections, including a formal appointment. Lynd does not assert that he received a formal appointment. Instead, he claims that the alleged approval is sufficient, that the requirement of a formal appointment is irrelevant, and that the defendants are wrong when they "assert that not receiving a 'certificate of appointment' or never taking an examination for part-time employment somehow negates his right to due process." (Pl.'s Consolidated Resp., Dkt. 104, at 5.)

The phrase "negates his right to due process" is misleading. It assumes that Lynd had a right to due process that could be negated. But this is not the case. At the risk of being repetitive, the existence of a formal appointment, among other requirements, is a statutory prerequisite to coverage under the Act. Falling within the ambit of the Act causes due process protections to attach. If the Act does not apply, there is no right to due process.

"[A] property interest must be based on more than merely an 'abstract need or desire for it.'" *Moore v. Muncie Police & Fire Merit Comm'n*, 312 F.3d 322, 326 (7th Cir. 2002) (quoting *Roth*, 408 U.S. at 578). It is a creature of statute (or contract, as discussed below). *See*, *e.g.*, *Roth*, 408 U.S. at 577. Lynd has failed to show that the Act confers a protectable property interest based on the Board's purported approval.

### c. Lynd's Claim That the District and PSSI Are Joint Employers

Approaching the "officer or member" requirement from a different angle, Lynd next contends that the District and PSSI are joint employers so his employment by PSSI means that he was also employed by the District. The defendants dispute that Lynd was an employee of the District due to his employment by PSSI. The court need not reach this question as even if Lynd somehow was an employee of the District, the result would be the same because as discussed above, being an "employee" does not transform Lynd into an appointed "officer or member" of the District.

In addition, Lynd contends that PSSI and the District acted in concert to provide the District with full-time contract firefighters. He then states that the District "remains a state actor even though it contracts with PSSI to provide it with full-time firefighters" so the District cannot "limit its accountability for the performance of public functions that it has an affirmative constitutional obligation to provide even if contracting with a private company." (Pl.'s Memo, Dkt. 98, at 10-11.) Lynd appears to be arguing that firefighting services are a public function and that performance of a public function created a constitutional right to due process in his employment with PSSI that prevented the District (which did not directly employ him) and Frederick from terminating him without a hearing. This novel argument is unavailing.

To state a procedural due process claim under § 1983, Lynd must establish: "(1) a protected property interest; (2) a deprivation of that property interest by someone acting under the color of state law; and (3) a denial of due process." *See Booker-El v. Superintendent*, 668 F.3d 896, 900 (7th Cir. 2012). Element one is the existence of a protected property interest, while element two looks to whether the individual who allegedly harmed the plaintiff acted

under color of state law. *Id.* Individuals can act under color of state law if they "act[] in place of the state performing a delegated public function." *Maniscalco v. Simon*, 712 F.3d 1139, 1145 (7th Cir. 2013).

A plaintiff cannot show that a protected property interest exists by claiming that he was harmed by someone acting under color of state law. Instead, he must establish element one by pointing to "state law securing certain benefits" or "a clearly implied promise." *Roth*, 408 U.S. at 577. Thus, Lynd's arguments about "color of state law" do not show that he had a protected property right to employment as a full-time contract firefighter for the District.

Accordingly, the court rejects all of Lynd's arguments based on his position that the Act created a protectable property interest in his full-time placement at the District.

### 2.      The District's Policy Manual

Lynd next contends that pursuant to the District's policy manual, he was entitled to notice and a hearing before PSSI could terminate him from the position of full-time contract firefighter. In support, he contends that he "was considered an employee of the [District]" because his "employment was in conformance with the definition as specified in the [District's] policy manual which provides that an 'employee' is a contract employee." He also cites to ¶ 13 of his statement of facts, which provides:

> The District Policy Manual defines "employee" as a person employed by the Bristol Kendall Fire Protection District, whether on a full-time or part-time basis or pursuant to a contract, whose duties are subject to the direction and control of an employer with regard to the material details of how the work is to be performed. "Employer" means the Bristol Kendall Fire District. (Def. Doc. 151).

Lynd did not provide a pinpoint citation for this quotation. The cited document is part of an untabbed group exhibit comprised of all of the defense documents relied on by Lynd. Lynd's

failure to provide a pinpoint citation here and elsewhere in his submissions violates the local rules, which requires a movant to include "specific references" to the record. Loc. R. 56.1(a); *see also United States v. Furr*, No. 07-CR-57, 2015 WL 1034056, at *24 (E.D. Wis. Mar. 10, 2015) ("[B]oth defendants fail to provide pinpoint citations for quotations and/or information from the exhibit which they cite in their briefs. Apparently the defendants expect, and are relying on, the court to find the quotation or information somewhere in the cited multi-page documents.").

However, fortuitously for Lynd (and the court, which would have made a good faith effort to locate the quotation despite Lynd's delict), Frederick provided a complete copy of the 221-page policy manual, as well as pinpoint citations to multiple places where the document defines "employee" in various contexts. In the definition section of the policy manual, "employee" is defined as "[a]ll members, POCs [paid on-call personnel] and civilian personnel, as defined by these policies." (Frederick Resp. to Pl.'s Facts, Dkt. 100-1, Ex. 14 at § 1.04 (J).) The definition section then defines the sub-sets of employees. "Civilian personnel" do not perform firefighting or paramedic duties. (*Id*. at § 1.04(F).) "Full-time commission personnel" are "[a]ll employees hired through the Board of Fire Commission pursuant to full-time hiring statutes." (*Id*. at § 1.04(L).) A "member" is "[a]ny full-time firefighter and/or paramedic appointed in the District." (*Id*. at § 1.04(O).) "Part-time employees" are paid-on-call civilian personnel. (*Id*. at § 1.04(P).) "Paid-on-call personnel (POC)" are part-time, at-will employees who perform firefighting and/or paramedic work and are paid on an hourly or "per call" basis. (*Id*. at § 1.04(S).)

The "ethics" section of the policy begins with its own set of definitions. (*Id*. at § 1.22.) That section defines "employee" as "a person employed by the Bristol Kendall Fire Protection District, whether on a full-time or part-part time basis or pursuant to a contract, whose duties are subject to the direction and control of an employer with regard to the material details of how the work is to be performed, but does not include an independent contractor." (*Id*. at § 1.22(A)(7).) "Employer" is defined as "the Bristol Kendall Fire Protection District." (*Id*. at § 1.22(A)(8).) The "ethics" section lists different types of impermissible activities and sets forth penalties for ethics violations.

The fact that the policy manual requires contract workers to comply with the District's ethical standards does not mean that contract workers are employees for all purposes. *See Cruse v. Hook-Superx, Inc.*, 561 F. Supp. 2d 993, 1000 (N.D. Ind. 2008) (relying on a "plain language" interpretation of an employee handbook). Regardless, yet again, even if the policy manual included Lynd in the general definition of employee (which it does not), that does not make him an appointed "officer or member" of the District who is entitled to due process protection because, as discussed above, "employee" is not synonymous with appointed "officer or member."

### 3.    The Contract Between PSSI and the District

Lynd's final argument supporting his claim that he was entitled to notice and a hearing before PSSI could fire him from his full-time position as a contract firefighter assigned to the District is based on the contract between PSSI and the District. In pertinent part, the contract provides that:

> Prior to assignment to full time service to Bristol-Kendall, the Bristol-Kendall
> Fire Chief or his designates shall reserve the right to interview each Firefighter

candidate. A resume of each candidate shall be provided by PSSI to Bristol
Kendall. Each PSSI Firefighter assigned to full time service to Bristol-Kendall is
required to meet physical requirements established by Bristol-Kendall at the sole
expense of Bristol-Kendall. Bristol-Kendall shall have the right to reject or
terminate any Firefighter from service with Bristol-Kendall *for just cause or for
reasons of incompatibility*, and PSSI shall replace such Firefighter within a
reasonable amount of time. PSSI shall give priority in hiring to local personnel.

(Pl.'s Exhibits, Dkt. 99-3, at Ex. 6 ¶ 10) (emphasis added.)

Lynd asserts that because he could be terminated only for "just cause," he had a protected

property interest in his placement with the District. This is not what ¶ 10 says: it allows the

District to forbid PSSI from placing a specific individual at the District "for just cause or for

reasons of incompatibility." *Id.* That is not the same thing as prohibiting PSSI – Lynd's

employer in connection with his full-time work for the District – from firing him unless "just

cause" exists.

Frederick stresses that the relationship between PSSI and Lynd is governed by the PSSI

employee handbook, as opposed to the District-PSSI contract. Lynd signed PSSI's "Employee

At-Will Statement" when he was rehired in 2007 and annually thereafter. The "Employee

At-Will Statement" provides, in relevant part, that:

I . . . acknowledge that my employment with Public Safety Services is not for a
specified period of time and can be terminated at any time for any reason, with or
without cause or notice, by me or by the company. I acknowledge that no oral or
written statements or representations regarding my employment can alter the
foregoing. I also acknowledge that no manager or employee has the authority to
enter into an employment agreement – expressed or implied – providing for
employment other than at-will . . . .

I understand that the foregoing agreement concerning my at-will employment
status and the company's right to determine and modify the terms and conditions
of employment is the sole and entire agreement between me and Public Safety
Services, Inc. concerning the duration of my employment, the circumstances
under which my employment may be terminated and the circumstances under
which the terms and conditions of my employment may change. I

further understand that this agreement supercedes all prior agreements, understandings and representations concerning my employment with the company.

If I have questions regarding the content or interpretation of this Employee Handbook, I will bring them to the attention of my supervisor.

(Fredericks' Exhibits, Dkt. 94-11, at Ex. 11.)[13] Lynd does not address this language as his argument that he could be terminated only "for cause" relies on the District-PSSI contract.

It is true that a civil service employee who can be terminated only for cause has a constitutionally protected property interest in continued employment. *See Dibble v. Quinn*, — F.3d —, No. 14-2746, 2015 WL 4393536, at *4 (7th Cir. July 20, 2015) (citing *Cleveland Board of Educ. v. Loudermill*, 470 U.S. 532, 538-40 (1985)). The "for cause" language, however, allows the District to request another contract worker from PSSI if cause exists or there is an incompatibility issue. (Pl.'s Exhibits, Dkt. 99-3, at Ex. 6 ¶ 10.) The contract between PSSI and the District does not allow the District to fire a PSSI employee itself or impose a requirement that PSSI may only fire one of its employees for cause. *See id.*; *see also* Frederick Dep., Dkt.

---

[13] The District's policy manual includes similar "at will" language as the first page of the policy manual is captioned "disclaimer" and states that:

THESE POLICIES CONTINUE THE CURRENT POLICY OF AT-WILL EMPLOYMENT. UNLESS OTHERWISE INDICATED IN A WRITTEN CONTRACT BETWEEN THE EMPLOYEE AND THE DISTRICT, OR BY LAW, ALL PERSONNEL ARE CONSIDERED EMPLOYEES AT-WILL, AND ANY AND ALL LANGUAGE WHICH MIGHT BE CONSTRUED TO THE CONTRARY IS HEREBY SPECIFICALLY DISCLAIMED. "AT WILL" EMPLOYMENT MEANS THAT YOUR EMPLOYMENT WITH THE DISTRICT IS NOT FOR ANY SPECIFIC TIME AND MAY BE TERMINATED AT WILL, WITH OR WITHOUT CAUSE AND WITHOUT PRIOR NOTICE, BY THE DISTRICT OR YOU MAY RESIGN FOR ANY REASON AT ANY TIME.

(Frederick's Resp. to Pl.'s Facts, Dkt. 100-1, Ex. 14 at i.)

95-7, at 82:15-83:19 ("Bristol Kendall can't terminate my employees . . . . The understanding is that the client, Bristol Kendall, can accept or reject for reasons of incompatibility as it says or for just cause. Then I would replace that employee. They can't terminate my employee, they are not their employee").

Thus, even if Lynd was a third-party beneficiary of PSSI's contract with the District (an issue which the court need not reach), the "just cause" portion of the contract does not place limits on PSSI's ability to fire its employees. Accordingly, Lynd's reliance on the contract between PSSI and the District does not establish a protectable property interest in Lynd's full-time employment with PSSI.

For all of these reasons, Lynd's motion for summary judgment as to Count I is denied and the defendants' motions as to this count are granted. *See Petru v. City of Berwyn*, 872 F.2d 1359, 1365 (7th Cir. 1989) (affirming grant of summary judgment in favor of the City when the plaintiff failed to establish the "essential element" of a due process claim because he did not show that he had a protectable property interest in an appointment as a City firefighter).

**B.     Procedural Due Process – Coerced Resignation (Count III)**

While the parties dispute what happened at the October 14, 2010 meeting, they agree about the outcome: Lynd resigned from his part-time position with the District and was terminated from his full-time position with PSSI. As the court has previously held, while a voluntary resignation will preclude a due process claim, in certain circumstances an "involuntary resignation" – that is, a constructive discharge or a coerced resignation – can form the basis of a due process claim. *See Palka*, 623 F.3d at 453.

Lynd cannot prevail on a claim that he involuntarily resigned from PSSI because PSSI terminated his employment. Lynd did, however, resign from his part-time position with the District. To proceed with his due process coerced resignation claim against the District, Lynd must first point to a protected property interest in his part-time position with the District. *See Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir.1995) (a property interest in employment is a necessary predicate to a coerced resignation claim); *see also Quint v. Butts*, No. 11-CV-905-JPS, 2012 WL 523906, at *3 (E.D. Wis. Feb. 16, 2012) ("[A] coerced resignation, like constructive discharge, is an independent wrong and does not justify withholding due process of law to which a public employee is entitled.").

The two possible sources of a protected property interest in the part-time firefighting position are the Act and the District's policy manual. The Act expressly covers fire protection districts with "a fire department of which any officers or members are full time, paid members. 70 Ill. Comp. Stat. § 705/16.01; *Doering*, 2012 WL 1533349, at *3 ("Sections 16.01 through 16.18 [of the Act] only apply to full-time paid firemen in fire protection districts that employ full-time paid firemen.").

The Act's plain language does not reach Lynd's part-time position with the District and thus cannot provide the necessary protected property interest. The District's policy manual also does not create a protected property interest, for the reasons discussed above. Thus, Lynd has failed to demonstrate that he had a protected property interest in his part-time position with the District or that a triable issue of fact exists with respect to this issue. Lynd's motion for summary judgment as to Count III is, therefore, denied and the defendants' motions as to this count are granted. *See Petru*, 872 F.2d at 1365.

## IV.    CONCLUSION

For the reasons stated above, Lynd's motions for summary judgment [97] and to strike [108] are denied.  Lynd appears to have filed his motion to strike twice; the second motion to strike [114] is denied as duplicative.  The motions for summary judgment filed by Frederick [91] and the District [95] are granted.  The clerk is directed to enter final judgment accordingly.


ENTER:


_____/s/_____
JOAN B. GOTTSCHALL
United States District Judge

DATED:   September 2, 2015